## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 01 2015, 8:50 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Corey Goodnight,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 1, 2015

Court of Appeals Case No.
49A02-1505-CR-452

Appeal from the Marion Superior Court

The Honorable Marc Rothenberg, Judge

Trial Court Cause No.
49G02-1406-FB-031330

**Bailey, Judge.**

# Case Summary

Corey Goodnight ("Goodnight") was convicted of Theft, as a Class D felony,[1] and Attempted Robbery, as a Class B felony.[2] He now appeals, raising for our review the sole question of whether there was sufficient evidence to sustain his conviction of Attempted Robbery.

We affirm.

# Facts and Procedural History

During their lunch break on June 9, 2014, Shirley Fleming ("Fleming") and Troyce Golden ("Golden"), sisters who worked nearby one another, had eaten lunch together and were walking along Washington Street toward Meridian Street in Indianapolis. Fleming was carrying her wallet under her arm, and Golden was carrying a lunch bag that was suspended by a strap from her shoulder.

Goodnight was riding his bicycle along Washington Street after having left an intensive outpatient treatment program for heroin use, and wanted money to

---

[1] Ind. Code § 35-43-4-2(a). Goodnight's offenses were committed on June 9, 2014, and the Indiana General Assembly revised Indiana's criminal statutes effective July 1, 2014. We refer at all times to the version of the statutes applicable at the time of Goodnight's offenses.

[2] I.C. §§ 35-42-5-1 & 35-31.5-2-168.

purchase heroin. Goodnight saw Fleming and Golden walking down the street, and noticed Fleming's wallet.

[5] After looking to see whether he could easily take Fleming's wallet, Goodnight circled his bicycle around, rode up behind Fleming and Golden, and grabbed Fleming's wallet. Golden also felt a pull from behind and underneath where she was carrying her lunch bag, fell onto the wheel of Goodnight's bicycle, and fell to the ground. Golden had scrapes on her elbows, deep cuts in her knees, and bruising and bleeding on her face and eye.

[6] As Goodnight tried to ride away, Fleming yelled out, saying that someone had stolen her wallet. Quentin Bey ("Bey"), a nearby pedestrian, saw Goodnight take Fleming's wallet and saw Golden fall, and grabbed Goodnight as he rode by. Bey took Fleming's wallet and returned it to her, and began to wrestle Goodnight to the ground.

[7] At some point during the struggle with Bey, Goodnight said that he had a knife and attempted to retrieve it from his pocket, but Bey kicked it away. A nearby electrical contractor, Chadd Sherman ("Sherman"), saw the incident from his cherry picker, returned to the ground, and helped Bey subdue Goodnight before police arrived. A third man also helped subdue Goodnight, and Sherman was able to secure Goodnight's hands with zip ties. Once police arrived, Goodnight was placed into handcuffs and arrested.

[8] On June 10, 2014, Goodnight was charged with two counts of Robbery: one as to Fleming (Count I), and one as to Golden (Count II). A bench trial was

conducted on February 26, 2015. During the trial, Goodnight admitted to having committed Theft as to Fleming. At the trial's conclusion, the court found Goodnight guilty of Theft, as a Class D felony, as a lesser included offense to Robbery with respect to Count I, and guilty of Attempted Robbery, as a Class B felony, as a lesser included offense to Robbery with respect to Count II.

[9] On May 6, 2015, a sentencing hearing was conducted. At the end of the hearing, the trial court sentenced Goodnight to 180 days imprisonment for Theft and seven years imprisonment for Attempted Robbery, with the sentences run concurrent with one another, yielding an aggregate term of imprisonment of seven years. The trial court ordered 662 days of the sentence to be served as executed time in the Department of Correction, ordered 1,528 days to be served on home detention, and suspended the rest of Goodnight's sentence to probation.

[10] This appeal ensued.

# Discussion and Decision

On appeal, Goodnight challenges only the sufficiency of the evidence as to his conviction for Attempted Robbery. Our standard of review in such cases is well-settled.

> This court will not reweigh the evidence or assess the credibility of witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028 (Ind. Ct. App. 2002). Only the evidence most favorable to the judgment, together with all

reasonable inferences that can be drawn therefrom will be considered. *Id.* If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, then a conviction will be affirmed. *Id.* at 1028-29.

*Sargent v. State*, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007).

[11] To convict Goodnight of Attempted Robbery, as a Class B felony, the State was required to prove beyond a reasonable doubt that Goodnight attempted to commit the offense of Robbery, as a Class B felony, by engaging in conduct that constituted a substantial step toward the commission of that crime. *See* I.C. § 35-31.5-2-168. Robbery, as a Class B felony, occurs when a defendant

> knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting an person in fear … while armed with a deadly weapon or [engaging in conduct that] results in bodily injury to any person other than the defendant.

I.C. § 35-42-5-1.

[12] Goodnight's challenge to his conviction centers on whether his conduct amounted to Attempted Robbery with respect to Golden. Goodnight argues that the "backwards jerk" Golden experienced, even taken in conjunction with her injuries, was insufficient to establish that Goodnight committed robbery.

[13] Interpreting the robbery statute under which Goodnight was charged, the Indiana Supreme Court in *Maul v. State* observed:

> We have held that the degree of force used to constitute the crime of robbery has to be a greater degree of force than would be necessary to take possession of the victim's property if no resistance was offered and that there must be enough force to constitute violence.

467 N.E.2d 1197, 1199 (Ind. 1984).

[14] This Court has also considered the use of force in distinguishing a robbery from a theft in *Cooper v. State*, 656 N.E.2d 888 (Ind. Ct. App. 1995). In *Cooper*, the defendant took a firearm from Bailey's back pocket, and the evidence indicated "that the gun slipped easily from Bailey's pocket." *Id.* at 889. However, Bailey gave chase, and the two struggled in Bailey's front yard. *Id.* Cooper was only able to escape after biting Bailey's arm, but was subsequently arrested and found guilty of robbery. *Id.* On appeal, this Court affirmed Cooper's conviction, noting that "if the person in possession of the property resists before the property has been removed from the person's presence or premises, the taking is not completed immediately," and that "it is not until the property is successfully removed from the premises or person's presence that the robbery is complete." *Id.* Moreover, "[i]f the use of force is necessary to accomplish the theft and elude the person in possession of the property, it is part of the robbery." *Id.*

[15] Here, Golden testified that as Goodnight rode by, she felt something like "a jerk that pulled me down," that came "[u]nder her arm" where she was carrying her lunch bag. Tr. at 27. Golden further testified that she struck the ground from "a jerk when the young man came up beside me and pulled me down." Tr. at 27. This, taken together with testimony from Fleming, Bey, and Sherman that Goodnight was stopped within six feet of Fleming and Golden and continued to offer resistance afterward, permitted a reasonable inference that Goodnight used force in excess of that needed to take Golden's bag, even if Golden had

not offered resistance. To the extent Goodnight now argues that "[t]he possible attempted theft of Golden's lunch bag did not become an attempted robbery simply because she was somehow injured in the aftermath," Appellant's Br. at 15, and compares the difference between the Theft conviction in Count I with the Attempted Robbery conviction in Count II, we decline Goodnight's invitation to reweigh evidence.

[16] We accordingly conclude there was sufficient evidence to sustain Goodnight's conviction for Attempted Robbery.

[17] Affirmed.

Vaidik, C.J., and Crone, J., concur.